IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 03-cv-00824-MSK-CBS

KAREN A. ROULETTE,

    Plaintiff,

v.

ELAINE CHAO, Secretary of Labor,

    Defendants.

_____

**OPINION AND ORDER GRANTING, IN PART, PLAINTIFF'S MOTION
FOR RELIEF FROM ORDER ON MOTION FOR SUMMARY JUDGMENT**
_____

**THIS MATTER** comes before the Court pursuant to the Plaintiff's Motion for Relief from Order on Motion for Summary Judgment **(# 87)**, the Defendants' response **(# 89)**, and the Plaintiff's reply **(# 90)**.

On August 25, 2005, this Court granted in part **(# 70)** the Defendants' Motion for Summary Judgment **(# 61)**. Familiarity with the August 25, 2005 Order is assumed. As relevant here, that Order granted summary judgment to the Defendants as to several alleged adverse actions cited by the Plaintiff as giving rise to a claim of unlawful retaliation under Title VII. Specifically, the Court found that the Plaintiff could not establish that any of the following could constitute "adverse employment actions": (i) her transfer to the Adjudication Unit, and later, to the Medical Management Unit; (ii) her receipt of allegedly "arbitrary" instructions from her supervisors; and (iii) her receipt of an allegedly negative job reference to a potential employer.

1

*Docket* # 70 at 12-13. The Court's decision cited then-applicable Tenth Circuit law such as *Heno v. Sprint/United Mgmt Co.*, 208 F.3d 847, 857 (10th Cir. 2000), which emphasize that, to be an "adverse employment action" in a retaliation case, an employment decision must be "materially adverse" to the employee, and that "mere inconvenience or an alteration of job responsibilities" is not sufficient.

On June 22, 2005, the United States Supreme Court decided *Burlington Northern and Santa Fe Ry. Co. v. White*, 126 S.Ct. 2405 (2006). The Court began by noting that the various Circuit Courts had reached a variety of conclusions as to what is necessary to constitute an adverse employment action for purposes of a Title VII retaliation claim – for example, some courts require the showing of a "materially adverse change in the terms and conditions of employment," while others permitted a more broad showing that the action, although not directly affecting the terms and conditions of the employee's employment, would nevertheless likely have "dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* at 2410-11. The Court framed the issues to be decided as "whether Title VII's anti-retaliation provision forbids only those employer actions and resulting harms that are related to employment or the workplace," and "how harmful an act of retaliatory discrimination must be in order to fall within" the statute. *Id.* at 2411. As to the first issue, the Court concluded that "the scope of the anti-retaliation provision extends beyond workplace-related or employment-related retaliatory acts and harm," *id.* at 2414, encompassing both actions directly affecting the terms and conditions of employment as well as "actions not directly related to [ ] employment [such as those] causing harm <u>outside</u> the workplace." *Id.* at 2412 (emphasis in original). As to the second issue, the Court emphasized that "[t]he anti-retaliation provision protects an individual not from all

2

retaliation, but from retaliation that produces an injury or harm." *Id.* at 2414. Thus, it held that an employee must show that "a reasonably employee would have found the challenged action materially adverse [such that] it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* at 2414-15 (internal quotes omitted).

The Court went on to explicate this latter holding in some detail. Emphasizing that "it is important to separate significant from trivial harms," the Court explained that the statute's anti-retaliation provisions were not intended to "immunize [an] employee from those petty slights or minor annoyances that often take place at work and that all employees experience." *Id.* at 2415. It noted that "the significance of any given act of retaliation will often depend upon the particular circumstances." *Id.* For example, it explained that "[a] schedule change in the employee's work schedule may make little difference to many workers, but may matter enormously to a young mother with school age children." *Id.* Similarly, a supervisor's refusal to invite an employee to a social lunch would not be actionable, but excluding the employee from a weekly training lunch that would significantly contribute to the employee's professional advancement would be. *Id.* at 2415-16. The focus of the analysis, the Court explained, is on "the materiality of the challenged action and the perspective of a reasonable person in the plaintiff's position." *Id.* at 2416.

Turning to the facts of the *Burlington* case, the Court affirmed a jury's verdict that the reassignment of certain job tasks to and from the plaintiff were sufficiently adverse actions to support a claim of retaliation. *Id.* at 2416-17. The plaintiff held the position of "track laborer," assigned primarily to forklift operations. *Id.* at 2409. After complaining of discriminatory comments by her supervisor, the plaintiff was reassigned to other, more arduous tasks within the "track laborer" classification. *Id.* Although the Court held that "reassignment of job duties is not

3

automatically actionable," *id.* at 2417, it found that, under the facts of the case, there was sufficient evidence that the duties reassigned to the plaintiff were "by all accounts more arduous and dirtier" than the more prestigious forklift operator tasks, and that a jury could reasonably find that such a reassignment would be materially adverse to a reasonable employee. *Id.* "Almost every job category involves some responsibilities and duties that are less desirable than others," explained the Court, and "[c]ommon sense suggests that one good way to" retaliate against employees "would be to insist that they[ ] spend more time performing the more arduous duties and less time performing those that are easier or more agreeable." *Id.* at 2416.

In the instant Motion, the Plaintiff argues generally that the *Burlington* decision warrants reconsideration of this Court's ruling on her retaliation claim.  She is not particularly specific as to what portions of that ruling she considers to be incorrect in light of *Burlington*; she asks merely that the Court "reconsider the portion of the Summary Judgment Order granting summary judgment in favor of Defendant on [her] Title VII retaliation claim." *Docket* # 87 at 4. Reading the Plaintiff's Motion generously to her, the Court finds that she appears to be asserting that the Court's findings as to the materiality of her reassignments to the Adjudication Unit and the Medical Management Units are the ones affected by *Burlington*, *see e.g. Docket* # 87 at 4 ("Notably, among the employer actions challenged by Ms. Roulette were two involuntary job reassignments within a short period of time."), as she makes no reference, directly or implicitly, to the Court's findings that her complaints of allegedly "arbitrary" instructions from her supervisors or the giving of an allegedly negative job reference are affected by the change in the governing

law.[1]

Thus, the Court reconsiders the Plaintiff's claim that her reassignments were materially adverse employment actions under the standard set forth in *Burlington*. The Plaintiff was reassigned to the Adjudication Unit from September to December 2002. The Plaintiff contends in her response that this reassignment was an adverse action because it "required adjudication processing of stress claims, which are more complex than adjudications [she] had previously handled." *Docket # 67* at 13. However, the evidence cited by the Plaintiff in conjunction with this contention does not support it. In support of the assertion that stress claims were "more complex" than her other claims, the Plaintiff cites to a portion of her deposition. *Docket # 68*, Ex. 1 at 101-107. That deposition excerpt does not use the phrase "more complex"; rather, at one point, the Plaintiff explains that the process of adjudicating stress claims is "more extensive" than

---

[1] Even if the Court were to reconsider its ruling with regard to the "arbitrary" instructions and job reference, it would nevertheless reach the same conclusion as it originally did. The fact that the Plaintiff received deadlines from her supervisor that she considered to be "arbitrary" is precisely the sort of "trivial harm" that "often take[s] place at work and that all employees experience." *Id.* at 2415. Indeed, the seemingly arbitrary deadlines imposed by supervisors – *e.g.* that a project be "done yesterday"– are so archetypal as to be common fodder for workplace comedy. Absent citation by the Plaintiff to evidence indicating that her particular circumstances made her unusually susceptible to harm from such demands, *see Burlington*, 126 S.Ct. at 2415, she fails to carry her burden of showing that such an action was materially adverse.

The Plaintiff's claim that a putative employer was given a "negative" job reference as a result of her complaining of discrimination might arguably constitute the kind of retaliatory act that would support an action under *Burlington*. However, the Plaintiff's response to the Defendant's summary judgment motion does not dispute the Defendant's assertion that the alleged negative comment was made by the Plaintiff's supervisor in response to a direct question by the putative employer as to what was the most negative aspect of the Plaintiff's employment. The Plaintiff does not refute the Defendant's assertion that such a question was asked by the putative employer, nor does she cite to evidence that would indicate that the supervisor's response was untruthful – *i.e.* that it did not reflect the supervisor's opinion as to the most negative trait of the Plaintiff – or otherwise show that the Defendant's proffered explanation for this adverse action is so incredible or inconsistent as to be pretextual. *Mickelson v. New York Life Ins. Co.*, 460 F.3d 1304, 1315 (10th Cir. 2006).

5

defense counsel had previously described it. *Id.* at 103 ("Q: And in terms of adjudicating stress claims, someone would again file a claim . . . and then you would decide whether or not to grant or deny benefits, correct? A: The process of stress claims is far more extensive than that."). Nowhere in the cited deposition excerpt does the Plaintiff compare the relative challenges of adjudicating stress claims and the claims she handled prior to her reassignment, much less testify that the task of adjudicating stress claims is, for example, more arduous or that her prior position was more prestigious. *Compare Burlington*, 126 S.Ct. at 2417. Indeed, when asked "what's different about adjudicating a stress claim versus a nonstress claim," the Plaintiff responded that "I don't feel that I can answer that question," because she never actually adjudicated a stress claim during her time in the Adjudication Unit. *Docket* # 68, Ex. 1 at 101. Under these circumstances, the Court finds that the Plaintiff has not carried her burden of showing that her reassignment to the Adjudication Unit was sufficiently different from her prior position that a reasonable employee would find the reassignment to be "materially adverse." Thus, upon reconsideration in light of *Burlington*, the Court nevertheless finds that this reassignment does not amount to an adverse employment action sufficient to support a retaliation claim.

In December 2002, the Plaintiff was reassigned to the Medical Management Unit. She asserts that this reassignment resulted in her being responsible for a "problem caseload." *Docket* # 67 at 14. In support of this assertion, she cites to her deposition in which she explains that she considered this reassignment to be a punishment. *Docket* # 69, Ex. 1 at 110. She explains that the employee previously responsible for the caseload "had neglected those cases for more than a year and a half," and that "it was obvious to most people in the office, especially among the claim staff, that she was having a lot of the PR problems with her caseload." *Id.* at 111. Taking this

evidence in the light most favorable to the Plaintiff, as the Court must in evaluating her response to a summary judgment motion, *Quaker State Minit-Lube, Inc. v. Fireman's Fund Ins. Co.*, 52 F.3d 1522, 1527 (10th Cir. 1995), the Court finds that a jury could reasonably find that reassignment to the Medical Management Unit amounted to a reassignment to more difficult or arduous duties, and that such a reassignment could be materially adverse to a reasonable employee. *Burlington*, 126 S.Ct. at 2417. Accordingly, upon reconsideration, the Court finds that the Plaintiff has demonstrated a genuine issue of fact as to whether her reassignment to the Medical Management Unit constituted an adverse action, and the Court vacates that portion of its prior ruling that the Defendant is entitled to summary judgment on the Plaintiff's retaliation claim as it relates to this reassignment.

For the foregoing reasons, the Plaintiff's Motion for Relief from Order on Motion for Summary Judgment **(# 87)** is **GRANTED IN PART**, insofar as the Court, upon reconsideration in light of *Burlington*, **VACATES** that portion of its August 25, 2005 Order **(# 70)** that granted summary judgment to the Defendant on the Plaintiff's retaliation claim as it related to her reassignment to the Medical Management Unit, and **DENIED IN PART**, insofar as the Court, upon reconsideration, nevertheless adheres to the rulings in that Order.

Dated this 6th day of February, 2007

                                        **BY THE COURT:**

                                        */s/ Marcia S. Krieger*
                                        _____

                                        Marcia S. Krieger
                                        United States District Judge